Good morning. May it please the court. My name is Nick Veith. I work for the Federal Defenders of Idaho and I represent Mr. Goodwin. We brought this appeal and concentrated on four issues that came up at sentencing. The first issue was some letters that were submitted to a probation officer. Those letters were in the form of victim impact statements and they were supposed to conform to 18 U.S.C. 3509. The letters that were submitted, the first being from a proposed victim herself, a young girl. This letter was evidently put on legal letterhead and submitted to the probation officer only and then put into the pre-sentence report. Did anyone sign the letter? What was that, Your Honor? Did anyone sign the letter? We're not sure. I've never seen the letter to this day. Evidently there was an affidavit as well that accompanied the letter purporting to be from the little girl's attorney. Saying that it was her letter? And indicating that evidently he helped her write it. In what form or fashion? What's wrong with that? Do you suggest that the girl could not have written the letter? Had she written the letter, it would be inadmissible? The suggestion, Your Honor, and honestly we just don't know. And that was our issue, whether or not the little girl did write it and furthermore whether or not this girl was a victim herself. We just don't know. Wasn't she one of the, didn't his own testimony or admissions confirm the information that was in that letter? There was, the letter was a victim, Your Honor. I believe you may be referring to the prior instances with his, I think it was his sister-in-law and younger sister. Yes. Regarding these letters, these letters were victim impact statements from a little girl who had pictures taken of her. The problem becomes we have no link between whether or not we actually know if this was a victim in our case and second, whether or not it was actually written by the victim herself. And I guess, you know, jumping forward to why this is even relevant, we look at, you know, first and foremost, whether or not Judge Windmill used some of this information in sentencing Mr. Goodwin. And he did. At the end of the sentencing hearing, he noted how heinous this type of abuse is and that because of this issue, the statutory maximum should be imposed on Mr. Goodwin. Second, regarding the mother's letter, we don't believe that the mother was a victim, although one of the statutes that probation and the government. The mother of the girl. That submitted another victim impact statement. You don't believe the mother was a victim? No, Your Honor. Under the statute, only the victim or a guardian ad litem can submit a statement. That was not submitted. The mother wrote a letter into the court, and then the court adopted that letter into the pre-sentence report. I remember reading something that a Japanese soldier wrote. I remember reading something that a Japanese soldier wrote. If you kill the son, you kill the mother. You know, if you rape the daughter, you rape the mother. You know, the mother suffers, too. And, Your Honor, on that point. The whole family suffers, so they're victims. And on that point, in no way would we, you know, ever disrespect or downplay these victims. All we want to do here is make sure that this is indeed a victim of our crime, and whether or not the proper procedure. Well, why didn't you take this up at sentencing? Couldn't you? I did take this up at sentencing, Your Honor. I objected, and the court overruled my objections and allowed the submission of those statements. Well, did you ask? You say you never saw the letter. I did not. Did you ask for it? The probation officer indicated that only she is allowed to look at them under 3509, because the victim impact statements go directly to the pre-sentence writer, and the pre-sentence writer then adopts them into the pre-sentence report. Well, as I understand, you saw the pre-sentence report, didn't you? Yes, Your Honor. All right. Your issue here is you want an interpretation of the statute that requires that there be a guardian litem appointed in order to have a victim impact statement. Your Honor, either the victim or a guardian litem should present that information to the pre-sentence writer. And you're saying the mother under the statute may not present it directly. Exactly. Okay. That's really your issue here, is it? Yes, Your Honor. Okay. All right. Why don't you get to the next issue? Thank you, Your Honor. The next issue that we raised was the insufficiency of the evidence on the two five-level enhancements that our district judge applied in this case. The first enhancement was for a pattern of behavior. The judge ruled that although no conviction was made, that the statements by Mr. Goodwin under duress was sufficient, along with some interviews that the detective had of the sister and the sister-in-law. We objected under the basis at least to that one five-level enhancement as being insufficient under the clear and convincing standard. We request that we at least be able to interview, cross-examine the victims, and just to make sure that, indeed, they were the victims in this case. There was no ability for us to examine these witnesses. Does that get to your position that you just said, that his statements that he gave to the police were under duress? Your Honor, during the ---- Did you ever challenge those statements or ask did they be suppressed? We did not challenge them, Your Honor. At the sentencing hearing, I did question the detective, and the detective did admit that Mr. Goodwin became hysterical, suicidal, and began praying. He ended up having to be hospitalized soon thereafter and put into the hospital because of his condition. And so regarding his statements, we just believe that they were insufficient to clearly establish under clear and convincing that he did, indeed, abuse those two girls. Did you ask at the sentencing that you be allowed to cross-examine the girls? Your Honor, we did not. The government, I believe, had, you know, what we believe, the burden to put up those witnesses to prove under clear and convincing that, indeed, that five-level enhancement should have been applied. All right. Well, that's a little different from what you said. We didn't compile it. Earlier you said we thought we should have had a chance, an opportunity, to question the test. Now you're just saying that the statements of the two girls, plus whatever weight you give to his statement, is insufficient to meet the clear and convincing statement. Yes, Your Honor. Okay. So the second issue regarding the insufficiency of the evidence, that was the number of images. And this issue is regarding the Child Victim Identification Program. The FBI evidently keeps a database, and this database is a database that collects information from other countries around the world regarding child victims. Now, the individual that testified did not have any expertise in medical or computer forensics, and really couldn't tell us how that Child Victim Identification Program was put together, how it was run. And so we just saw that information as being, well, you know, first hearsay on hearsay on hearsay, but also that she just did not have the proper qualifications to address whether or not the images that we were reviewing were actually of child victims. Furthermore, regarding that information that was provided, there was access from other individuals to the computers, co-workers, different family members. And so the issue there becomes simply whether or not there was indeed enough information to show that there was 600 images or more. The individual testified that Mr. Goodwin's computer did have movie files, but Mr. Goodwin never admitted to having those movie files, and when the detective was going over the information with Mr. Goodwin, the movie files never came up. So there was no connection with Mr. Goodwin and the movie files that did indeed push him over to 600 images or more. On both of those issues, the court- The movie files necessary to get to the 600? Again, Your Honor, the binder that the detective is talking about was never submitted and never put in the record, so we really don't know an exact number of what he marked down as, yes, I did download, no, I did not remember downloading. So that was never established, how many actual images he had. So we just don't know. Regarding shifting the burden, after the government presented their case, the court then requested and asked me, asked counsel, whether or not we were going to provide any information to the contrary. That directly shifted the burden to Mr. Goodwin to disprove those two five-level enhancements. The last one is acceptance of responsibility. I thought the judge said fairly clearly that it's the government's burden and it's not as strong as beyond a reasonable doubt, but it's still solely the government's burden. Judge Windmill made the comment that this is more akin to a civil proceeding in that the government does not have or does not bear the responsibility to prove beyond a reasonable doubt. Well, that's correct, isn't it? It is, Your Honor, but they still must prove by clear and convincing. And then the judge shifted the burden over to us, looking to see whether or not we could disprove some of the evidence that the government provided. Well, no. I mean, the government put its evidence on and then asked you if you were going to challenge any of it. And, Your Honor, we didn't have to. And, Your Honor, we did challenge that through cross-examination and we brought out many issues that the court could consider and shouldn't consider. And you didn't challenge the clear and convincing? The other issue that the judge presented was whether or not we could show whether or not other individuals downloaded information onto the computer. And we were in no position to go out and send our investigators out and investigate whether or not individuals committed a crime. We rest that on the government, as it should rest. All right.  Thank you, Your Honor. May it please the Court. Jack Haycock, Assistant U.S. Attorney from Pocatello, Idaho. The standard of review here is were these findings clearly erroneous? On the victim impact statement issue, these were the victims that were identified in the child pornography that had nothing to do with the persons that were molested by the defendant. The probation officer talked to the child victim's lawyer who said, this letter was written by this child victim. We put it on letterhead because she's getting these inquiries from all around the country and we represent her and we send out these letters on her behalf. And the probation officer made that phone call. She told that to the judge in court on the record. And that was the basis for the judge's finding that the girl had written the letter. Was the letter signed? I think the letter was signed. I, too, don't believe I saw the letter, Your Honor, but I think the letter was signed by the attorney. It was on firm letterhead. And it was the girl had written the letter and then the attorney just put it on the letter. And he said that's what they send out every time they get one of those inquiries. They have these databases where these child victims are identified in I guess close to hundreds of cases a year around the country. And then the government has to send out a victim notification letter to all of these children. And so in this particular case, this law firm was handling these inquiries for this child. The other case, the other letter was submitted by the girl's mother. The court relied on 18 U.S.C. 3771, which specifically says that for a child under 18, a family member can submit a victim impact statement. And that also was communicated to the court by the probation officer on the record at the sentencing. With regard to the pattern of sexual abuse, we had the confession from the defendant. We had the statements of the victims. They were unrebutted. The rules allow hearsay evidence at these types of hearings. The detective who interviewed the defendant and interviewed the victims testified. Counsel could have subpoenaed the victims. We personally didn't want to because we didn't want to put the victims through that. That's why we had the detective testify. But counsel could have subpoenaed them. The court found that although the defendant was under a great deal of stress at the time, the confession was not coerced and the evidence was unrebutted. And counsel argued at the time that it was not sufficient for clearing convincing, but the court found it was. We submit that it was not clearly erroneous. On the 600 images issue, there were 13 videos that were found on the computer where children, known victims, were found in the videos. The analyst went to this database that's maintained by the National Center for Exploited and Missing Children and by the FBI and found these children in the database. She said that she was specifically looking for prepubescent children, and we recognized that she didn't have medical training. Perhaps there are some children that are still children under 18, and their development is in question, but she was looking for prepubescent children only, and she found 13 videos that had those, that children were known to be part of this database. And we also knew that the defendant had admitted downloading pornography onto that computer. He had not specifically admitted to downloading these videos, but he did not deny downloading these videos. He did not take the stand at the hearing, and that was our evidence. The defendant had admitted downloading child pornography, hundreds of images. These were on that computer, and there was no evidence that anybody else had done that, and the court found that to be beyond or clear in convincing evidence. Your Honor, each movie file under the guidelines is counted as 75 images. So with just the movie files alone plus the undisputed images, we're clearly over 600. I thought I read in the record that they had gone through with the defendant the images and some of the files, and he said, that one I remember putting on, I don't remember this one, I remember that one, are the ones that are being counted only those that he admitted outright to having placed on the computer? Of the still images, yes. The problem was none of the movie files were in that notebook because it was just impossible to print them out. So I think that the final tally was based in large measure on the video files that were valued at 75 images each. And finally, counsel did not address the sentence. I would just submit that the sentence was reasonable and the acceptance was properly calculated from the guideline range rather than from the statutory maximum. Thank you. Thank you. Thank you. We'll give you a minute. I think you're over your time. Am I over my time? Oh, you were before. Just briefly, Your Honor, regarding the known victims and the CVIP, that being the Child Victim Identification Program, this database is largely a mystery. What goes in it, we're not quite sure. Where it comes from, we're not sure. How the FBI analyzes this, we're not sure. So the issue here became whether or not these were possibly morphed images, whether or not some of these images came from models that were younger-looking models. We just didn't know, and that's why the objection was levied. And regarding the one question on the number of images, Judge Windmill gave us a five-level increase because we had 600 or more. It was never determined how many exact images we had. We just don't know. It was determined under the pre-sentence report that there were thousands, but that was including the objected-to video imagery, along with we- But that doesn't take into account the individuals that may not have been on this database, and it does not take into account duplication. And so that was our concern, that there was double-counting. We just weren't sure of actually how many individual unique images Mr. Goodwin had on his computer. Regarding acceptance of- Were these objections first raised at the sentencing hearing, or did you file written objections to the pre-sentence investigation report raising these issues? I filed objections prior to the sentencing hearing, Your Honor. Regarding acceptance of responsibility, Judge Windmill noted that- Your Honor, I guess the point that we're raising is that the judge should be allowed to take into consideration acceptance of responsibility from- to only being able to apply acceptance of responsibility to the guideline range, not to the 3553A factors regarding the nature and circumstances of the crime itself. And we requested that the judge look at the 3553A factor, especially regarding the nature and circumstances of the crime, that being Mr. Goodwin went to the detectives, admitted owning and possessing child pornography, admitting at the plea, and then also admitting and taking responsibility at sentencing. So his sentence that he got was, remind me- It was the statutory maximum of 120 months. Ten years. Yes, Your Honor. And the guideline, I think, was 135 to something. Is that correct? It was, Your Honor. I believe-  It was, Your Honor. So we requested instead of- the guideline range was 11 1⁄2 to 14 years. The statutory max was 10 years. We requested more in the line of 7 to 8 years regarding taking acceptance from the statutory max and giving Mr. Goodwin acceptance of responsibility for that. That's discretionary with the sentencing judge, though, isn't it,  Your Honor, we were just looking at the application that the judge used. Judge Windmill used the acceptance of responsibility equation only for guideline purposes. He did not look at acceptance of responsibility through the full 3553A factor, that being the nature and circumstances of this case. Well, but 3553A, of course, includes the sentencing guideline range, whatever it may be. It does, Your Honor. But we would also request that more guidance be given and allow district court judges the ability to factor in acceptance of responsibility for the nature and circumstances of the issue of the crime. We don't have to give guidance on that. Thank you, Your Honor. Booker gave us that. Yeah, Booker gave us that. All right. Thank you. We'll go to the next one. That is Burge v. Delacue.
judges: Pregerson, Reinhardt, Strom